Manuel MARTINEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 36863.

Court of Criminal Appeals of Texas.

April 22, 1964.

Rehearing Denied June 3, 1964.

Frank M. Teveni, A. L. Hernden, San Antonio, for appellant.

James E. Barlow, Dist. Atty., Ted Arevalo and Joseph D. Valdez, Asst. Dist. Attys., San Antonio, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is unlawfully and willfully refusing to provide for the support and maintenance of his two children. A prior misdemeanor offense of Child Desertion having been alleged for enhancement, the punishment; three (3) years confinement in the State Penitentiary.

Trial was to a jury upon a plea of not guilty. The State first adduced evidence from David Garcia, Clerk of the County Court at Law No. 2 of Bexar County, establishing the prior misdemeanor conviction on March 1, 1963. Mr. Garcia testified that appellant was placed in the Bexar County jail on March 1, 1963, and he was released on April 7, 1963. The identity of appellant was established by testimony from William J. Condon, an Assistant District Attorney of Bexar County, Texas.

Estella Martinez, the wife of appellant, then testified that she and appellant had married in 1958 and that as a result of the marriage they had two children, Manuel Martinez, Jr., 4 years of age, and Francis Amelia Martinez, 2 years of age. Upon inquiry by the state as to the amount received by Mrs. Martinez from appellant for support from March 1, 1963, to August 1, 1963, she replied that she had received $40.00 from him, and that there was one payment made in May, June and July, two of them being in the amount of $15.00 and one in the amount of $10.00. The trial was held October 29, 1963. The indictment filed September 18, 1963, alleged that appellant refused to provide for support and maintenance on or about the 1st day of August, 1963. Mrs. Martinez further related that appellant "works for his own relatives and they always say that he is not working". She was then asked if she had seen him working during the period of May 1, 1963, to August 1, 1963, and she stated that she had seen appellant taking some lumber from a freight train close to Ruiz Street and that it must have been about 4 months ago. She stated that she was managing to live on state welfare payments of $76.00 a month and from assistance given her by St. Vincent de Paul and that she worked as a carhop. She further related that in addition to seeing the appellant work about 4 months ago that "she had seen him working more than twice but that she hadn't counted them". She then testified that during September 1963 appellant was in jail; that she had not seen him working anytime during the month of August 1963 and that if she was not mistaken that was when he was put in jail and that in July she only saw him once when he got home from work, but that

she thought that he was in jail in July on a drunk charge. Appellant's wife further testified that she had never known her husband to have any illness or physical defect and that she did not know of his ever being in the hospital for an extended length of time and that so far as she knew he had been physically able to get about between March 1, 1963, and August 1, 1963. Geronimo Contreras testified as a state's witness and related that he worked for himself unloading freight and that sometimes he asked appellant to help him. The witness further testified that during the period March 1, 1963, to August 1, 1963, that he gave appellant some work, "sometimes one day or two days, sometimes there was no work at all"; that appellant earned during that time $8.00 a day; that appellant helped in the truck carrying and unloading. Mr. Contreras stated that appellant was the son of his son-in-law. Mr. Contreras testified upon cross-examination that appellant worked for him about 3 days total between March 1st and August 1st and that he paid him $8.00 a day and that appellant would do "whatever comes up". He further stated that everytime he had some work he gave appellant work. Jesus Contreras then testified that he loaded and unloaded lumber; that Geronimo Contreras was his father, but that they worked independently of each other; that he had had occasion to have appellant as his helper different times in the year; that between March and August 1963 appellant helped him one day and that he paid appellant $8.50. Jesus Contreras testified that appellant worked 3 or 4 hours, not a complete day, and then another day and a half, three times, estimating that he paid appellant about $24.00. He further testified that appellant had come around and asked him for work and that he had seen appellant helping his (Contreras) father once in a while and that he had seen him working for his (Contreras) brother. The witness stated that there were five members of his family engaged in this type of work and that appellant had helped all five of them off and on once in a while and that he had never

asked appellant to work and had appellant refuse to work. The witness further related that he called appellant when he had work for him and that appellant had asked him for work when there wasn't any work.

Appellant testified that between the dates of March 1st and August 1st, he worked for Geronimo Contreras 2 days a week for about 3 weeks, "I would say around six," replying to a question that he might have worked about six days. He further testified that he worked for Mr. Contreras about 2 days; that he looked for work elsewhere by going to the Texas Employment Commission and asking for work; that he was doing painting at one time but that he had never done any type of skilled labor and that he had never refused to work anywhere between March 1st and August 1st; that he would send money to his wife for support once in a while when he worked and that he never refused to work when any work was offered; that between August and September he was in jail. Upon cross-examination he was asked if he could give the names of one or more companies where he asked for a job, and he replied that he had asked at H. E. B., on Brazos Street, Centano Super Market, and also made applications at Church's Fried Chicken and several other places, and that he had been to the Texas Employment Commission once since March until the time of the trial in 1963. Appellant testified on re-direct examination that his wife told him that she would rather have the state helping her than him, and that she would love to send him to prison. He stated upon re-cross examination that he lived with his parents; that he gave his mother some money for food whenever he worked, but that he did not have a car and that his parents did not charge him for living with them and that he just helped them whenever he could and that they gave him no money. Appellant's wife was recalled to the stand and testified that she and appellant had lived in Napoleon, Ohio, with appellant's older sister and brother-in-law and that during this time appellant was employed as a painter

whenever there was no snow and that he used to get $50.00 and $60.00 a week and that they stayed in Ohio about a year and that appellant had another job helping out the owner of the house where they stayed and that he earned between $15.00 and $20.-00 a week on this job and that he would sometimes make $80.00 a week or $77.00; that since coming back to San Antonio appellant had never worked at any regular jobs, only with relatives, but she did not know how much he made; that she had no way of knowing how much appellant earned right now.

■ We think that the State's evidence fails to show appellant's ability to contribute more than he actually did. This is an evidentiary requisite in order to show willful neglect. Adams v. State, Tex.Cr. App., 361 S.W.2d 877; Prock v. State, 92 Tex.Cr.R. 494, 244 S.W. 601 and Cardona v. State, 160 Tex.Cr.R. 541, 273 S.W.2d 73.

■ Because of the insufficiency of the evidence to support the judgment, the cause is reversed and remanded for another trial.